UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| CHARLES C. FREIHOFER, III : | |
|     Plaintiff : | |
|   v. : | |
| : | Case No. 2:17-cv-00149 |
| VERMONT COUNTRY FOODS, INC., : | |
| NEW ENGLAND COUNTRY FOODS, LLC, : | |
| M. PETER THOMSON, *individually and as President* : | |
| *and Director of Vermont Country Foods, Inc. and* : | |
| *Managing Member of New England Country Foods, LLC* : | |
|     Defendants : | |
| : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now come defendants Vermont Country Foods, Inc. ("VCF") and New England Country Foods, LLC ("NECF"), by and through their attorneys, Phillips, Dunn, Shriver, and Carroll, P.C., joined in by Defendant M. Peter Thomson, appearing *pro se*, and files this Motion for Summary Judgment and in support thereof submits the Defendants' Statement of Undisputed Facts and states the following:

## FACTS

Vermont Country Foods, Inc. is a Vermont corporation that was organized in March, 1994.  Statement of Undisputed Facts, ¶ 1.

After discussions and correspondence between Plaintiff and Defendant M. Peter Thomson ("Thomson"), who was acting in his capacity as President of VCF, Plaintiff invested in VCF in April, 1995.  Plaintiff's initial $100,000.00 investment resulted in him owning 11,013.22 shares in VCF, and $75,000.00 of his investment was booked as debt that VCF owed to him. Statement of Undisputed Facts, ¶¶ 3 - 6.

From April, 1995 through May, 2000, Plaintiff made additional investments in VCF, and after the last of these investments, Plaintiff owned 34,346.55 shares in VCF and VCF was indebted to him for $164,900.00.  Statement of Undisputed Facts, ¶¶ 7 - 14.

Plaintiff has produced a spreadsheet (but has not testified), indicating that he made an additional investment of $25,000.00 through the end of May, 2000, but VCF has been unable to confirm that alleged second investment of May, 2000.  Statement of Undisputed Facts, ¶ 15.

In December 31, 2001, all of the debt that VCF owed to the Plaintiff was converted into equity.  Statement of Undisputed Facts, ¶ 16.  Plaintiff agreed to this conversion in writing.  Statement of Undisputed Facts, ¶ 17.  After this conversion, Plaintiff owned 96,787.57 shares in VCF and VCF no longer owed any money to Plaintiff that was classified as debt.  Statement of Undisputed Facts, ¶¶ 18, 22.

In February, 2002, Plaintiff loaned $25,000 to VCF, which was acknowledged by Thomson as President of VCF.  Statement of Undisputed Facts, ¶ 19-20.

After this loan was made in February 2002, Plaintiff did not participate in any purchases or offerings of shares in VCF or make any additional loans to VCF.  Statement of Undisputed Facts, ¶ 23.

The last offering VCF made for individuals to purchase stock in VCF was in February 22, 2005.  Statement of Undisputed Facts, ¶ 24.

In early 2005, after a judgment was issued against VCF by a creditor, VCF organized an out of bankruptcy workout arrangement to satisfy claims of creditors.  Part of that arrangement involved creating NECF (which was organized in February, 2005), licensing the then current VCF product lines to NECF, and subordinating affiliated and insider creditors to the claims of unaffiliated creditor.  Statement of Undisputed Facts, ¶ 25.  Shareholders in VCF retained their

shares in VCF, and were given membership interests in NECF equivalent to their percentage of ownership of stock in VCF. Statement of Undisputed Facts, ¶ 26.

Plaintiff became aware of the existence of NECF no later than January, 2006, and understood that he owned membership interests in NECF no later than October, 2006. Statement of Undisputed Facts, ¶¶ 27, 28.

Counsel representing Plaintiff sent a letter VCF and NECF dated December 9, 2016, requesting certain information relating to VCF and NECF. Neither VCF nor NECF responded to that letter at the time. Statement of Undisputed Facts, ¶ 29. In connection with providing discovery in this case, VCF and NECF have complied with the requests made in that December 9, 2016 letter, to the extent that documents ever existed and continue to exist. Statement of Undisputed Facts, ¶ 30.

## STANDARD FOR SUMMARY JUDGMENT

"A party moving for summary judgment bears the burden of "show[ing] that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." *In re DeRogatis*, 2018 WL 4370990 *10 (2d Cir. 2018), quoting Fed. R. Civ. Pro. 56(a). The evidence must be viewed in the light most favorable to the non-moving party and drawing all reasonable inferences and resolving all ambiguities in that party's favor. *Townsend v. Benjamin Enters, Inc.*, 679 F.3d 41, 47 (2d Cir. 2012).

    I.    **The First Cause of Action Should be Dismissed Pursuant to the Securities and Exchange Act Statute of Repose**

    A. *Plaintiff's First Cause of Action Must be Linked to a Material Misrepresentation Related to Purchase or Sale of a Security*

Plaintiff's First Cause of Action alleges fraud under 15 U.S.C. § 10(b), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5(b-c). Plaintiff characterizes this claim as "a private and

personal federal securities action against [the Defendants] under § 10(b) of the Securities Exchange Act of 1934, (Complaint, paragraph 1) and again as "fraud under the Securities Exchange act of 1934 . . . against those Defendants who are alleged to have directly participated in a continuous fraudulent practice and course of business since VCF's inception and up to the present." Complaint, paragraph 3.

In order to recover damages in a private securities fraud action under § 10(b) of Securities Exchange Act of 1934 and Rule 10b-5 issued by the Securities and Exchange Commission, "a plaintiff must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 460-61 (2013), *quoting Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 37-38 (2011).

While the "connection" aspect of the third element has been broadly construed, the phrase in the statute ("in connection with") means, at a minimum, that the "device employed, whatever it might be, be of a sort that would cause reasonable investors to rely thereon, **and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities**." *In re Carter-Wallace, Inc. Securities Litigation,* 150 F.3d 153, 156 (2d Cir. 1998), *quoting SEC v. Texas Gulf Sulphur Co*., 401 F.2d 833, 860 (2d Cir. 1968)(*en banc*) (*emphasis added*).

Mere allegations of mismanagement or breach of fiduciary duty do not, however, give rise to a claim under § 10(b) or Rule 10b-5, even where exercised by majority shareholders to the alleged detriment of minority shareholders. *Santa Fe Industries Inc v. Green*, 430 U.S. 462, 479 (1977). Absent a causal link to a purchase or sale of a security, claims of ongoing corporate

mismanagement or breach of fiduciary duty simply do not give rise to a claim under § 10(b) of the Securities Exchange Act or the Securities Exchange Commission's corresponding rule.

Accordingly Plaintiff's claim under his First Cause of Action must be examined in the context and in the time frame of purchases, sales, transfers, or acquisitions of a security.

> B. *Plaintiff's Federal Causes of Action Should be Dismissed Pursuant to the Applicable Statute of Repose.*

As Plaintiff's First Cause of Action represents a "private right of action that involves a claim of fraud . . . concerning the securities laws," it is governed by 28 U.S.C. § 1658(b), which reads, in its entirety:

> (b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(47)), may be brought not later than the earlier of —
>
> (1)  2 years after the discovery of the facts constituting the violation; or
>
> (2)  5 years after such violation.

The United States Supreme Court recently clarified and confirmed that § 1658(b) includes both a statute of limitations and a statute of repose. *China Agritech, Inc. v. Resh*, 138 S.Ct. 1800, 1804 (2018):

> The [Securities] Exchange Act has a two-year statute of limitations that begins to run upon discovery of the facts constituting the violation. 28 U.S.C. § 1658(b). The Act also has a five-year statute of repose.

The *China Agritech* Court explained the difference in a footnote to the above quotation, stating:

> A statute of limitations "begin[s] to run when the cause of action accrues—that is, when the plaintiff can file suit and obtain relief." *California Public Employees' Retirement System v. ANZ Securities, Inc.,* 582 U.S. ——, ——, 137 S.Ct. 2042, 2049, 198 L.Ed.2d 584 (2017) (internal quotation marks omitted). A statute of repose, by contrast, "begin[s] to run on the date of the last culpable act or omission

of the defendant." Ibid. (internal quotation marks omitted).

The *ANZ Securities* Court explained the important effect on a plaintiff's allegation resulting from the dual "statute of limitations" and "statute of repose" nature of §1658(b):

> As the Court explained in *CTS Corp. v. Waldburger,* 573 U.S. ——, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014), statutory time bars can be divided into two categories: statutes of limitations and statutes of repose. Both "are mechanisms used to limit the temporal extent or duration of liability for tortious acts," but "each has a distinct purpose." *Id.,* at —— – ——, 134 S.Ct., at 2182.
>
> Statutes of limitations are designed to encourage plaintiffs "to pursue diligent prosecution of known claims." *Id.,* at ——, 134 S.Ct., at 2182–2183 (internal quotation marks omitted). In accord with that objective, limitations periods begin to run "when the cause of action accrues"—that is, "when the plaintiff can file suit and obtain relief." *Id.,* at ——, 134 S.Ct., at 2182 (internal quotation marks omitted). In a personal-injury or property-damage action, for example, more often than not this will be " 'when the injury occurred or was discovered.' " *Ibid.*
>
> In contrast, statutes of repose are enacted to give more explicit and certain protection to defendants. These statutes "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Id.,* at —— – ——, 134 S.Ct., at 2183 (internal quotation marks omitted). For this reason, statutes of repose begin to run on "the date of the last culpable act or omission of the defendant." *Id.,* at ——, 134 S.Ct., at 2182.

137 S.Ct. at 2045.

One of the most important distinctions between a statute of limitations and a statute of repose is that a statute of limitations may be equitably tolled because facts were not known to a plaintiff, but a statute of repose cannot be equitably tolled. *Id*., 137 S.Ct. at 2045.

28 U.S.C. § 1658(b)(1) creates a two year statute of limitations, and 28 U.S.C. § 1658(b)(2) creates a five year statute of repose. Thus, a private cause of action that involves a claim of fraud concerning the federal securities laws cannot be brought later than five years from the date of the allegedly fraudulent acts, regardless of when the acts are discovered by the plaintiff.

Here, the Plaintiff has alleged violations of 15 U.S.C. § 10(b), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5(b-c).  As discussed above, since the statute and the regulation address actions related to the purchase or sale of securities, the five year statute of repose should run from the last date any securities were bought or sold by the Plaintiff, or vested in Plaintiff.

At his deposition, the Plaintiff presented an exhibit that he had prepared (Exhibit 16 to Plaintiff's Deposition, attached as Exhibit C to the Statement of Undisputed Facts) that he stated covered all his monetary investments in Vermont Country Foods, Inc.[1]  The last date of any investment that Plaintiff lists on Exhibit 16 is February, 2002.  Plaintiff's Complaint makes no allegations that he bought or sold securities in Vermont Country Foods, Inc. after that date.  Accordingly, the five year statute of repose on securities claims relating to Vermont Country Foods, Inc. would have run no later than 2007, and those claims should be dismissed with prejudice.

As to NECF, in paragraph 71 of his Complaint, Plaintiff states that "[p]rior to Defendant Thomson's letter to the Plaintiff in February, 2009, Plaintiff was unaware of the existence of NECF."  Although it is clear Plaintiff was aware of NECF well before February, 2009,[2] even applying that February, 2009 date (for the purposes of this motion) as the date from which the five year statute of repose should run, Plaintiff's rights under 15 U.S.C. § 10(b), 15 U.S.C. §

---

[1] Exhibit 16 includes a reference to a $25,000 investment in 2001 that does not contain a check number.  Defendants have been unable to verify that alleged investment, and reserve their right to contest that alleged investment.  However, for the purposes of this Motion for Summary Judgment, whether that investment was made is not material given that it was allegedly made in 2001.

[2] The allegation that Plaintiff first became aware of NECF in February, 2009 is at odds with testimony and documents from Plaintiff's deposition. Plaintiff's attorney marked as an exhibit an undated letter from either **October, 2005 or October, 2006** in which Plaintiff refers to an earlier meeting and states "I find out at that meeting I am the proud owner of 60-70,000 some odd . . . shares of something called NECF."  Exhibit 12 to Plaintiff's Deposition     Plaintiff's counsel also introduced an undated letter from **November, 2008**, from Plaintiff to Mr. Thomson, as president of NECF, requesting information for both VCF and NECF.  Exhibit 15 to Plaintiff's Deposition.

78j(b), and 17 C.F.R. § 240.10b-5(b-c) as to NECF would have expired no later than 2014, and those claims should be dismissed with prejudice.

> II. **The Plaintiff's Second Cause of Action Should be Dismissed**

*A. The Second Cause of Action Should be Dismissed as Moot.*

Plaintiff's Second Cause of Action alleges a breach of 11A V.S.A. § 16.02, which provides certain rights of inspection to a shareholder of a corporation organized under Vermont law. Specifically, the Complaint alleges that the Defendants have not responded to a letter from Plaintiff's counsel dated December 9, 2016 addressed to Vermont Country Foods, LLC, a copy of which is attached to the Statement of Undisputed Facts as Exhibit E.

With respect to his Second Cause Action, Plaintiff sole request for relief in his Complaint is "judgment . . . [o]n the second cause of action for the provision of records and things demanded by Plaintiff for inspection and copying." Complaint, page 28. This is consistent with case law interpreting 11A V.S.A. § 16.02, where the proper remedy is an order requiring a corporation that has violated 11A V.S.A. §16.02 to produce the specific records requested. *See Towle v. Robinson Springs Corporation*, 168 Vt. 226, 227 (1998).

Through the discovery process in this case, Plaintiff has received the relief it requested in its Complaint. Defendants provided all the information requested in the December 9, 2016 letter that exist. Accordingly, Plaintiff's Second Cause of Action should be dismissed with prejudice as moot.

> *B. The Second Cause of Action Should be Dismissed Because Plaintiff Failed to Comply with the Requirements of 11A V.S.A. § 16.02.*

As quoted by Plaintiff in its Complaint, 11A V.S.A. § 16.02(c) requires that a shareholder requesting records to state the purpose for copying or inspecting those records with specificity:

> (c) A shareholder may inspect and copy the records described in subsection (b) of this section only if:
>
>> (1) the shareholder establishes that the shareholder's demand is made in good faith and **for a proper purpose**;
>>
>> (2) the shareholder **describes with reasonable particularity the shareholder's purpose** and the records the shareholder desires to inspect; and
>>
>> (3) the records are **directly connected with the shareholder's purpose**.

The December 9, 2016 letter does not meet the requirements of 11A V.S.A § 16.02. Passing over the incorrect identification of Vermont Country Foods, *Inc*. as Vermont Country Foods, *LLC,* the letter contains no statement of any kind of the purpose for which the records are requested.

In *Towle v. Robinson Springs Corporation*, 168 Vt. 226 (1998), the Vermont Supreme Court emphasized that "[w]hen requesting to inspect a corporation's records, the shareholder **must** state the proper purpose . . . and the requested records **must** be 'directly connected with the shareholder's purpose.'" *Id*. at 228, *citing and quoting* 11A V.S.A. § 16.02 (emphasis added). A corporation is required to produce records (or challenge a stated purpose as improper) once and only when a shareholder asserts a proper purpose and otherwise complies with the statutory requirements. *Id.* at 228-29.

Accordingly, Plaintiff's Second Cause of Action should be dismissed with prejudice for failing to meet the statutory pre-requisites of 11A V.S.A. § 16.02.

## II.     **The Plaintiff's Third Cause of Action Should be Dismissed**

Plaintiff's Third Cause of Action contains two requests -- a request for "common law accounting" and an order compelling Defendants to provide the records and documents requested

in the letter from Plaintiff's counsel dated December 9, 2016. The two requests are addressed separately below.

### A. *The Request for Production in the Third Cause of Action Should be Dismissed as Moot.*

As discussed above, the Defendants have produced the documents requested in the December 9, 2016 letter, to the extent that they exist, have been provided to Plaintiff, and this request for relief should be dismissed as moot.

### B. *Plaintiff has No Right To a "Common Law Accounting."*

Plaintiff has not established a need for or right to a common law accounting.

A common law accounting is an equitable remedy. *Osier v. Burlington Telecom*, 201 Vt. 483, 495 (2016)(*citing First Commodity Traders, Inc. v. Heinhold Commodities, Inc*. 766 F.2d 1007, 1011 (7th Cir. 1985).

It is well settled law that "equity will not afford relief where there is a plain, adequate and compete remedy at law." *Gerety v. Poitras*, 126 Vt. 153, 155 (1966), *citing Union Pac. R. Co. v. Board of Com'rs of Weld County*, 247 U.S. 282 (1918).

Plaintiff has not demonstrated or plead that the exercise of equity is necessary.

The Vermont Supreme Court recently addressed the situations in which the equitable remedy of accounting would be appropriate in *Osier v. Burlington Telecom*, 201 Vt. 483 (2016). The plaintiffs in *Osier* sought various remedies, including the remedy of an equitable accounting from the City of Burlington in connection with use of general tax receipt funds to construct and maintain a city-owned fiber optic company, Burlington Telecom. The certificate of public good issued to Burlington Telecom placed limits on the use of general tax funds. The trial court dismissed the request for the accounting and the Vermont Supreme Court affirmed that dismissal on appeal.

The *Osier* Court held "an equitable accounting is generally invoked where there is a need for discovery, the accounts at issue are complicated, there is a fiduciary or trust relationship, and legal remedies are inadequate." *Id.,* 201 Vt. at 495.  As the City of Burlington had provided financial information, reports, and other documents in discovery, the Court upheld the trial court's denial of the remedy of accounting.  *Id.,* 201 Vt. at 495-96.

In upholding the trial court's denial of the equitable remedy of an accounting, the *Osier* Court acknowledged that it was undisputed that the City of Burlington had used general funds in violation of the terms of the certificate of public good, but emphasized this fact did not give rise to a right to an equitable accounting, because the City had been forthcoming in providing information in discovery.  *Id.,* 201 Vt. at 495-96.

The Plaintiff's situation in this case is similar to that of the plaintiffs in *Osier*.  The defendants (Burlington Telecom and the City of Burlington) did not dispute that Burlington Telecom owed money to the City of Burlington and that the City had not abided by the terms of certificate of public good.  Although Charles Freihofer has alleged mismanagement and that he has not been repaid the $25,000 on a loan he made to Vermont Country Foods, Inc., those allegations do not, of themselves, entitle Charles Freihofer to the remedy of an equitable accounting.  As in *Osier*, Defendants have provided Mr. Freihofer with communications, financial statements, reports, and other documents in discovery.  Mr. Freihofer has not suggested nor pled any reason why his remedies at law are not adequate.

Accordingly, Plaintiff's Third Cause of Action should be dismissed with prejudice.

CONCLUSION

Accordingly, for the reasons set forth above, the Defendants respectfully request that the Court dismiss the Plaintiff's Complaint with prejudice and award Defendants their costs and attorneys' fees.

Dated October 24, 2018, at Brattleboro, Vermont.

VERMONT COUNTRY FOODS, INC. and
NEW ENGLAND COUNTRY FOODS, LLC

 /s/ David N. Dunn_____
David N. Dunn
Phillips, Dunn, Shriver & Carroll, P.C.
147 Western Avenue
Brattleboro, VT 05301
(802) 257-7244 ext. 112
ddunn@pdsclaw.com

M. Peter Thomson, *pro se*

 /s/ M. Peter Thomson _____
M. Peter Thomson

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the 24th day of October, 2018, a copy of the Motion for Summary Judgment and Defendants' Statement of Undisputed Facts in Support of Their Motion for Summary Judgment was served on all counsel of record electronically via CM/ECF.

Dated at Brattleboro, Vermont, this 24th day of October, 2018.

          /s/ David N. Dunn
David N. Dunn
Phillips, Dunn, Shriver & Carroll, P.C.
147 Western Avenue
Brattleboro, VT 05301
(802) 257-7244 ext. 112
ddunn@pdsclaw.com