UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT

CHARLES C. FREIHOFER, III,    )
                              )
        Plaintiff,            )
                              )
        v.                    )    Case No. 2:17-cv-149
                              )
VERMONT COUNTRY FOODS, INC.,  )
NEW ENGLAND COUNTRY FOODS,    )
LLC, M. PETER THOMSON,        )
individually and as President )
and Director of Vermont       )
Country Foods, Inc. and       )
Managing Member of New        )
England Country Foods, LLC,   )
                              )
        Defendants.           )

## OPINION AND ORDER

Plaintiff Charles Freihofer brings this private federal securities action against Defendants Vermont Country Foods, Inc. ("VCF"), New England Country Foods, LLC ("NECF"), and Defendant Peter Thomson pursuant to § 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act"). Freihofer's allegations essentially consist of two claims: (1) that Defendants withheld information and made fraudulent misrepresentations as they transferred all valuable assets from VCF to NECF, and (2) that Defendants must provide him with certain documentation and an accounting. Defendants now move for summary judgment, arguing that Freihofer's fraud claim is barred by a five-year statue of repose, that his requests for documents are moot, and that he is not entitled to an accounting. For the reasons set forth below, the motion for summary judgment (ECF No. 35) is **granted**.

**Background**

In April 1995, after discussions with VCF President Peter Thomson, Freihofer invested $100,000 in VCF. This initial investment granted Freihofer 11,103.22 VCF shares, with $70,000 of the investment booked as debt owed to him by VCF. Over the following five years, Freihofer made additional investments in VCF such that by mid-2000 he owned 34,346.55 shares and VCF owed him $164,900.

On December 31, 2000, all debt owed to Freihofer was converted into equity. Freihofer agreed to the conversion in writing. After the conversion, he owned 96,787.57 VCF shares.

In February 2002, Freihofer loaned VCF and Thomson $25,000. In April 2002, after VCF failed to repay the loan, Freihofer resigned from the company's board of directors. He alleges that he was compelled to resign not only because of the unpaid loan, but also because VCF and Thomson consistently failed to follow VCF's bylaws with respect to shareholder meetings, votes on resolutions, and distribution of information to shareholders. Freihofer claims that after he resigned, VCF stopped sending him information about the company despite his status as a shareholder.

Freihofer did not make any further investments or provide any additional loans to VCF. He did threaten legal action to enforce his rights under the $25,000 loan.

In early 2005, VCF entered into a workout agreement allegedly to satisfy claims of creditors. During that same time period, Thomson and VCF created NECF. VCF product lines and intellectual property were licensed to NECF, and VCF shareholders were given ownership interests in NECF. Freihofer did not authorize or consent to the transfer of his shares from VCF to NECF.

Freihofer asserts that beginning in 2006, when he first learned of the existence of NECF,[1] to the present day, Defendants have offered a variety of reasons for the formation of NECF. Those reasons have included: that NECF was established in order to comply with a new state law requiring a company using the word "Vermont" in its corporate name to actually produce products in Vermont; that VCF was a holding company for NECF; that NECF was formed to protect VCF from having to file for Chapter 11 bankruptcy; and that VCF was acting as a tax shelter due to its operating loss. Freihofer claims that those stated reasons were false and fraudulent, and that NECF was in fact established to transfer all value out of VCF into a single-member managed entity. That single-member entity allegedly enhanced Thomson's

---

[1] Freihofer's court filings are not consistent with respect to when he first discovered NECF's existence. The Complaint states that Freihofer was unaware of NECF prior to February 2009. ECF No. 1 at 16. Freihofer's statement of material facts states that he first learned of the existence of NECF in 2006. ECF No. 41-2 at 4.

3

ability to direct and manipulate the course of the company without interference from shareholders.

Thomson communicated VCF's role as a holding company for NECF, with an exclusive licensing agreement granted to NECF, in a letter to Freihofer dated February 13, 2009. Freihofer asserts that Thomson's communications with him ceased entirely after approximately January 2011. Despite this lack of communication, Freihofer submits that the scheme to defraud and misguide him has continued to the present day. For support, he cites "back room" private communications among Thomson and NECF's executive committee members, including Albert Freihofer, David Gibbons, and James Gibbons.

Examples of such "back room" communications include communications between Thomson and James Gibbons in the summer of 2010, in which the two discussed the equity positions of VCF and NECF. Freihofer contends that in those communications, Thomson joked about the ease of manipulating VCF and forming NECF. In a September 2011 email to James Gibbons, Albert Freihofer, and David Gibbons, Thomson reportedly discussed the potential for his equity positions. In March 2014, Thomson emailed James Gibbons to discuss establishing restricted stock units, which Freihofer characterizes as an effort "to manipulate the assets and net operating loss of Defendant VCF." ECF No. 41-2.

Freihofer alleges that Defendants' fraudulent scheme is

4

further evidenced by the distribution of Schedule K-1 Tax forms to the members of NECF's executive committee, but not to Freihofer, for the years 2005 through 2011. In 2014, Albert Freihofer was reportedly unable to obtain additional Schedule K-1 Tax forms from Thomson. In 2018, Thomson acknowledged to NECF executive committee members that he had been under audit by the Internal Revenue Service, and opined that it might be time to reorganize and restructure VCF.

Freihofer filed his Complaint in this case on August 7, 2017. In addition to alleging misrepresentations and omissions, the Complaint claims that Defendants breached Freihofer's right under Vermont law to examine the corporate records, and that he is entitled to an accounting. Defendants now move for summary judgment on all claims.

## Discussion

### I. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is

5

"material" if it might affect the outcome of the litigation under the governing law. *Id.*

In deciding a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmovant and resolves all ambiguities and draws all reasonable inferences against the movant. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). The nonmovant, however, may not rely on unsupported assertions or conjecture in opposing summary judgment. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmovant "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

**II. The Exchange Act's Statute of Repose**

VCF first argues that Freihofer's fraud claim is untimely. The Exchange Act, 28 U.S.C. § 1658(b), provides that a claim "may be brought not later than the earlier of (1) 2 years after the discovery of facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b). The latter, five-year limitation period has been interpreted as a statute of repose. *See P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 104 (2d Cir. 2004).

A statute of repose is enacted to provide "explicit and certain protection to defendants." *See Cal. Pub. Emps.' Ret.*

6

*Sys. v. ANZ Secs., Inc.*, 137 S. Ct. 2042, 2049 (2017). Statutes of repose "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014). Because the repose period is intended to provide certainty, it cannot be extended by equitable tolling. *Cal. Pub. Emps.' Ret. Sys.*, 137 S. Ct. at 2051 ("[t]he purpose and effect of a statute of repose . . . is to override customary tolling rules arising from the equitable powers of courts"; *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102-03 (2d Cir. 2004) ("a statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action.").

Freihofer filed his Complaint in 2017, thus setting the repose period at 2012. He did not receive communications from Defendants during the five-year period preceding his Complaint. He contends, however, that this case presents an ongoing scheme to defraud that commenced before 2012 and continues to the present day. Freihofer submits that because the scheme is continuous, Defendants can be held liable for their entire course of conduct, including actions that occurred prior to the repose period. This type of legal theory is commonly referred to as the continuing violations doctrine. *See, e.g., Marini v. Adamo*, 995

7

F. Supp. 2d 155, 183 (E.D.N.Y. 2014) ("The continuing violations doctrine (sometimes called the continuing wrong doctrine) allows a plaintiff to bring an action for a violation that occurs outside the repose period when a series of misrepresentations have been made and the last misrepresentation occurred during the repose period.").

Courts are divided as to whether a plaintiff can evade the five-year repose rule by alleging continuing violations. "Some district courts . . . have applied [a continuing violations theory] to blunt the statute of repose." *Howe v. Shchekin*, 238 F. Supp. 3d 1046, 1050 (N.D. Ill. 2017). "But a majority of courts have rejected the continuing fraudulent scheme theory with respect to Section 10(b) claims." *W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 299 F. Supp. 3d 1055, 1063–64 (D. Minn. 2018); *see also Howe*, 238 F. Supp. 3d at 1050 (describing support for the continuing fraudulent scheme theory as "tenous"); *Carlucci v. Han*, 886 F. Supp. 2d 497, 514 & n.9 (E.D. Va. 2012) (collecting cases). As one court recently determined, "[t]he plain language [of the statute] does not permit a plaintiff to toll the repose period by producing evidence of non-violating acts that occurred outside the repose period even if they are sufficiently connected to the scheme to create a chain to the original violating act." *W. Virginia Pipe Trades*, 299 F. Supp. 3d at 1064 (citing *Cal. Pub. Empls.' Ret.*

8

*Sys.*, 137 S. Ct. at 2051.).

Within the Second Circuit, district courts have reached "diametrically opposite conclusions" on the issue. *Marini*, 995 F. Supp. 2d 155 at 183-84; *compare In re Comverse Tech., Inc. Secs. Litig.*, 543 F. Supp. 2d 134, 155 (E.D.N.Y. 2008)("The weight of authority in this circuit is skeptical of the application of the continuing violations doctrine in securities fraud cases."), *with Plymouth Cty. Ret. Ass'n v. Schroeder*, 576 F. Supp. 2d 360, 378 (E.D.N.Y. 2008) ("[T]he weight of authority, including in this Circuit, dictates that the five year statute of repose first runs from the date of the last alleged misrepresentation regarding related subject matter."). Recently, however, the district courts have been critical of using a continuing violations theory to sidestep the five-year repose period. *See, e.g., Marini*, 995 F. Supp. 2d at 184.

In *Marini*, the court relied first upon the Supreme Court's statement that "the statute of repose is 'an unqualified bar' on 10(b) claims." 995 F. Supp. 2d at 183 (quoting *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 650 (2010)). The court also cited "the persuasive analysis of a majority of district courts throughout the country that have rejected the continuing violations doctrine in this context." *Marini*, 995 F. Supp. 2d at 184. More recently, *Kuwait Inv. Office v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 808 (S.D.N.Y. 2015) held that a continuing

violations theory "is unsupported by the plain language of the statute. . . . Since even one misstatement can give rise to a 'violation' for the purposes of the Exchange Act and, in turn, the operation of Section 1658(b)(2), the expansion of 'violation' to include a series of misstatements and omissions would almost certainly require the operation of equitable considerations." *Kuwait Inv. Office*, 128 F. Supp. at 808.

Indeed, the continuing violations theory itself "has been recognized by courts as an equitable tolling doctrine." *Id.; see also Plymouth Cty. Retirement Ass'n*, 576 F. Supp. 2d at 376 ("plaintiff relies on a form of equitable tolling or continuing violation theory"); *Howe*, 238 F. Supp. 3d at 1050 ("[T]o permit the repose period to run only from the date of the last misrepresentation in a series of misrepresentations would read into the statute a form of equitable tolling that preserves earlier misrepresentations."). The Supreme Court has expressly forbidden equitable tolling when applying a statute of repose. *See Cal. Pub. Emps.' Ret. Sys.*, 137 S. Ct. at 2051. Accordingly, the Court finds that Freihofer cannot avoid the repose statute by alleging continuing violations.

Freihofer relies *In re Beacon Assoc. Litig.*, 282 F.R.D. 315 (S.D.N.Y. 2012), in which members of the plaintiff class had purchased shares in a feeder fund that invested assets with the now-notorious Bernie Madoff. Plaintiffs alleged, among other

things, material omissions by advisors to the fund. Those advisors had an ongoing duty to disclose their concerns about Madoff, and failed to uphold that duty despite "frequent, even weekly communications . . . about the investments in question." *Id.* at 324. The court held that although the alleged misrepresentations were made more than five years prior to the filing of the Complaint, the claims were timely because of the advisors' ongoing duty to disclose, and the principle that "the statute of repose 'first runs from the date of the last alleged misrepresentation [or omission] regarding related subject matter.'" *In re Beacon Assoc. Litig.*, 282 F.R.D. at 324 (quoting *Plymouth Cty. Retirement Ass'n*, 576 F. Supp. 2d at 378).[2]

In *Plymouth Cty. Retirement Ass'n*, the court acknowledged that by asserting a continuing violations theory, the plaintiffs were effectively arguing for equitable tolling. 576 F. Supp. 2d at 376. The Court nonetheless held that claims were timely for false disclosures made both within and outside of the repose period, "[a]s those statements made within the repose period likely bear a factual nexus to statements made outside of the repose period." *Id.* at 378.

---

[2] The Second Circuit has rejected this principle in an unpublished opinion, stating that "Plaintiff's contention that the period of repose begins to run at the time of the last alleged misrepresentation (even when made after the final purchase or sale of the securities) ignores the applicable limitations period, and thus is devoid of merit." *Arnold v. KPMG LLP*, 334 F. App'x 349, 351 (2d Cir. 2009).

11

Here, Freihofer's claims cannot proceed based upon a continuing violations, or equitable tolling, theory.  Most significantly, the Supreme Court does not allow equitable tolling in the context of a repose statute.  *See Cal. Pub. Emps.' Ret. Sys.*, 137 S. Ct. at 2051.  Furthermore, Freihofer's claim of fraud arises out of the formation of NECF, of which he has been aware since 2006.  While he claims that the reasons given for NECF's formation are false, he has known of those reasons since at least the time of Thomson's letter to him in February 2009.  To the extent Defendants have had a duty to communicate the actual reasons for forming NECF, Freihofer knew that the allegedly-fraudulent omissions would be continuing when they stopped communicating with him in 2011.  Continued filings on behalf of VCF as an active business are irrelevant, as Freihofer's primary concern has long been his acquired interest in NECF.  Consequently, the relevant fraudulent acts took place outside the repose period.

The more recent internal communications cited by Freihofer may serve as evidentiary support for his fraud theory, but do not constitute independent securities law violations.  To recover damages in a private securities fraud action, a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a

security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460-61 (2013). Nothing in the allegations of misconduct since 2012 qualify as material misrepresentations or omissions in connection with a purchase or sale of security. Freihofer's last investment in VCF was in 2002; his stock was converted in or around 2005; he learned of the conversion to NECF shares in 2006; and he has been shut out from communications with Defendants since 2011. Given the five year statute of repose, his filing of a private securities fraud action in 2017 is untimely and therefore barred as a matter of law.

**III. Violation of Vermont Business Corporations Act**

Freihofer's second cause of action claims a breach of 11A V.S.A. § 16.02, which provides rights of inspection to shareholders of corporations organized under Vermont law. For relief on this claim, Freihofer seeks "the provision of records and things demanded by Plaintiff for inspection and copying." ECF No. 1 at 28. Defendants submit that as a result of document discovery in this case, all information requested by Freihofer has now been produced and his cause of action is moot.

Freihofer does not dispute that the information he requested has been received. He nonetheless argues that he is still entitled to relief in the form of attorney's fees and costs for

13

his efforts to obtain those documents. Vermont law provides for costs and attorney's fees when a court has ordered inspection and copying. *See* 11A V.S.A. § 16.04(c) ("[i]f the court orders inspection and copying of the records demanded, it shall also order the corporation to pay the shareholder's costs (including reasonable counsel fees) incurred to obtain the order."). Here, there was no court-ordered inspection. Freihofer is therefore not entitled to fees and costs.

## IV. Accounting

Freihofer's third and final cause of action seeks production of documents and a common law accounting. Freihofer again concedes that the document request has been satisfied. With respect to the request for an accounting, "an equitable accounting is generally invoked where there is a need for discovery, the accounts at issue are complicated, there is a fiduciary or trust relationship, and legal remedies are inadequate." *Osier v. Burlington Telecomm.*, 201 Vt. 483, 495 (2016). Defendants note that these requirements are cumulative.

Freihofer has not introduced any facts into the record demonstrating either complicated accounts or the need for additional discovery. As alluded to above, to survive a summary judgment motion, a non-movant "need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there

14

is a genuine issue for trial.'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Defendants submit that they have already provided extensive discovery in this case, and that without further evidence of genuine issues of material fact in dispute, Freihofer's accounting claim fails as a matter of law. The Court agrees.

## Conclusion

For the reasons set forth above, Defendants' motion for summary judgment (ECF No. 35) is **granted**.

DATED at Burlington, in the District of Vermont, this 8th day of July, 2019.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge